**F I L E D**
CLERK, U.S. DISTRICT COURT

**JUL 31 2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rsm _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>CELERINO JARAMILLO,<br>   aka "Bizzy,"<br>HUGO ARMANDO PINEDA,<br>   aka "Menace,"<br>OSCAR HERNANDEZ,<br>   aka "Drex,"<br>   aka "Dreks,"<br>   aka "Drecks,"<br>JONATHAN REYES,<br>   aka "Creeper,"<br>   aka "Creeps,"<br>JESSE VASQUEZ,<br>   aka "Lil Boxer,"<br>   aka "Lil B,"<br>JAVIER QUIROZ, JR.,<br>   aka "Pelon,"<br>CHELSEA MICHELLE GARCIA,<br>   aka "Rowdy,"<br>KEVIN ALEXIS ONTIVEROS,<br>   aka "Lil Bandit,"<br>JAIME MELENDREZ,<br>   aka "Mono,"<br>LUIS VELASQUEZ,<br>   aka "Louie the Barber,"<br>JESUS ZACARIAS,<br>   aka "Mochis,"<br>JAVIER RAY HERNANDEZ,<br>   aka "Speedy,"<br>DAVID URIBE, | No. 2:23-cr-00411(A)-HDV<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. § 1959(a)(3): Violent Crime in Aid of Racketeering; 21 U.S.C. § 846: Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C): Possession with Intent to Distribute and Distribution of Controlled Substances; 18 U.S.C. § 924(c)(1)(A): Possession of a Firearm in Furtherance of Drug Trafficking Crimes; 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition; 26 U.S.C. § 5861(d): Possession of an Unregistered Firearm; 18 U.S.C. § 1623(a): False Declaration Before a Court; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. §§ 1963, 981, 924, 28 U.S.C. § 2461(c), 21 U.S.C. § 853, 26 U.S.C. § 5872: Criminal Forfeiture] |

aka "Shorty,"
DANNYBOY LIMONES,
   aka "Danyboy Limones,"
   aka "Cyclone,"
TIMOTHY SHINGINRA HOWARD,
   aka "Maddog,"
JULIO CESAR RODRIGUEZ,
   aka "Cesar,"
JUAN CARLOS MARTINEZ,
   aka "Bulldog,"
JAVIER MARTINEZ, JR.,
   aka "Speedy," and
LYNETTE LEAL,
   aka "Alyssa Leal,"
   aka "China,"

          Defendants.

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

A.  THE RACKETEERING ENTERPRISE

     1.   At all times relevant to this First Superseding Indictment, defendants CELERINO JARAMILLO, also known as ("aka") "Bizzy" ("JARAMILLO"), HUGO ARMANDO PINEDA, aka "Menace" ("PINEDA"), OSCAR HERNANDEZ, aka "Drex," aka "Dreks," aka "Drecks" ("OSCAR HERNANDEZ"), JONATHAN REYES, aka "Creeper," aka "Creeps" ("REYES"), JESSE VASQUEZ, aka "Lil Boxer," aka "Lil B" ("VASQUEZ"), JAVIER QUIROZ, JR., aka "Pelon" ("QUIROZ"), CHELSEA MICHELLE GARCIA, aka "Rowdy" ("GARCIA"), JAIME MELENDREZ, aka "Mono" ("MELENDREZ"), LUIS VELASQUEZ, aka "Louie the Barber" ("VELASQUEZ"), JESUS ZACARIAS, aka "Mochis" ("ZACARIAS"), KEVIN ALEXIS ONTIVEROS, aka "Lil Bandit" ("ONTIVEROS"), JAVIER RAY HERNANDEZ, aka "Speedy" ("JAVIER HERNANDEZ"), DAVID URIBE, aka "Shorty" ("URIBE"), DANNYBOY LIMONES, aka "Danyboy Limones," aka "Cyclone" ("LIMONES"), TIMOTHY SHINGINRA HOWARD, aka "Maddog" ("HOWARD"), JULIO CESAR RODRIGUEZ, aka "Cesar" ("RODRIGUEZ"), JUAN CARLOS MARTINEZ, aka "Bulldog" ("JUAN MARTINEZ"), JAVIER MARTINEZ,

JR., aka "Speedy" ("JAVIER MARTINEZ"), and LYNETTE LEAL, aka "Alyssa Leal," aka "China" ("LEAL") (collectively, "defendants"), and others known and unknown to the Grand Jury, were members and associates of a criminal organization engaged in, among other things, acts involving murder, robbery, assaults, trafficking in controlled substances, money laundering, illegal gambling, and extortion.  At all relevant times, this organization, known as the Florencia 13 criminal street gang (hereinafter referred to as "F13"), operated in the Central District of California, and elsewhere.  F13, including its leadership, members, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which engaged in, and the activities of which affected, interstate and foreign commerce.  F13 constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

B.   BACKGROUND OF F13

     At all times relevant to this First Superseding Indictment:

     2.   F13 was a multi-generational gang founded in Los Angeles, California in the early 1950s.  The gang began as a small group of individuals who lived in and around the area of Florence Boulevard, in and near Los Angeles, California.  Initially, the gang was primarily involved in street robberies, drug sales, and fighting with rival gang members in "turf battles."  Through the years, the gang dramatically increased its membership by absorbing smaller, less powerful local gangs.

     3.   There were at least 22 cliques, or subsets, of F13 that together controlled an area of approximately three square miles in

3

and around the unincorporated areas of South Los Angeles County. Examples of these cliques included the Jokers, the Gangsters, 64th Street, the Termites, the Tiny Locos, Bear Street, the Malditos, and the HP (Huntington Park) Locos.  The overall number of F13 cliques has changed over the years as new cliques have been allowed to join the gang, and others have been expelled.  While F13's "territory," therefore, has changed over time, it historically has been contained within the approximate area bordered by the 10 freeway to the North, Imperial Highway to the South, the 110 freeway to the West, and the 710 freeway to the East; and it included at least the unincorporated Florence-Firestone neighborhood (also known as Florence-Graham) and parts of several nearby cities, such as Huntington Park, South Gate, Maywood, Bell, and Lynwood.  Based on the strength of its numbers and its reputation for violence, F13 controlled drug trafficking and other illegal activities within its territory.

4.   F13 continually was engaged in the distribution of multiple controlled substances, including, but not limited to, fentanyl, methamphetamine, heroin, cocaine, and marijuana.  In addition to supplying drug-using customers, members and associates of F13 regularly sold distributable amounts of drugs to each other and to others who they believed to be "street-level" drug dealers.

5.   To support their drug trafficking and racketeering activities, and to maintain control over their claimed "territory," F13 members and associates maintained a ready supply of firearms, including handguns and rifles.  They also sold such weapons for profit.  Firearms also were often discarded or destroyed after being used to commit acts of violence on behalf of the enterprise, so F13 regularly engaged in continued gun trafficking to ensure that it

maintained ready access to firearms at all times.  Being publicly
known to sell, and therefore possess, numerous firearms served the
additional purpose of supporting F13's reputation for violence and
intimidation.

6.    F13 was controlled by members and associates of the
"Mexican Mafia," or "La Eme."  The Mexican Mafia was an organized
group of individuals who controlled much of the drug distribution and
other criminal activities within California State Prisons, local
county jails, and some federal prisons.  Members of the Mexican Mafia
came from the ranks of local street gangs, including F13.  In return
for allowing local street gangs to maintain control over their
respective territories and for protecting the gangs' members and
associates during periods of incarceration, the Mexican Mafia
required the gangs to collect and pay "taxes" on all drug trafficking
and other illicit and illegal conduct taking place in those
territories (hereinafter, "extortionate taxes").  These illicit funds
were intended to be controlled by, and were often held in trust by,
gang members and associates for the Mexican Mafia member(s) in charge
of a particular area.  Members and associates of F13, therefore,
regularly paid extortionate taxes to the Mexican Mafia members who
oversaw the gang; and the collection of extortionate taxes from drug
dealers operating within F13's territory was a primary task of the
gang's leadership on the streets, as was punishing individuals who
failed to pay the requisite extortionate taxes.

7.    There were Mexican Mafia members who maintained leadership
roles over F13, including: unindicted co-conspirator number 1
("Co-Conspirator 1") and unindicted co-conspirator number 2
("Co-Conspirator 2").  Co-Conspirator 1 presently is serving a term

5

of life imprisonment without the possibility of parole.  In 2004, Co-Conspirator 1 issued written "reglas," or rules, from his prison cell at Pelican Bay State Prison that were intended to govern all F13 members and associates.  By way of these rules and later directives, Co-Conspirator 1 commanded certain senior gang members and other select individuals to assume leadership positions within F13's "territory."  These persons ("shot callers") were then ordered to coordinate the illegal distribution of drugs and other criminal activities, to ensure that extortionate taxes were collected, and otherwise to oversee their respective portions of F13's territory, such as by resolving disputes both among F13 members and associates and with members of other Los Angeles gangs.  Shot callers likewise were charged with exposing and punishing F13 members, as well as others residing in F13-controlled territory, who were identified as having cooperated with law enforcement or who otherwise violated F13's rules.

8.   At some point after 2007, Co-Conspirator 2, who was in state custody along with Co-Conspirator 1, became a leader of F13. Co-Conspirator 2, who is presently in federal custody in connection with racketeering and drug convictions related to his F13 activities, was, and is, able to disseminate instructions to F13's membership to maintain control over drug trafficking and other criminal activities within the gang's territory.

9.   The members of the leadership of F13 who are incarcerated are able to disseminate instructions to the gang's membership and to maintain control over drug trafficking and other criminal activities within the gang's territory through emails from inmates to both in-custody and out-of-custody members and associates and by telephone

calls from inmates to both in-custody and out-of-custody members and associates (i.e., "jail calls").

C.   PURPOSES OF THE ENTERPRISE

10.   The purposes of F13 included, but were not limited to, the following:

a.   Enriching Co-Conspirator 1 and Co-Conspirator 2 through, among other things, the remittance of the proceeds of extortionate taxes to their family members, friends, and associates;

b.   Enriching the members and associates of F13 through, among other things, the control of and participation in the trafficking of controlled substances within F13 territory and elsewhere, the operation of illegal gambling establishments ("casitas"), and the collection of extortionate taxes;

c.   Maintaining control and authority over all F13 territory, often through threats, intimidation, and acts of violence against rivals and others;

d.   Preserving, protecting, and expanding the power of F13 through the use of threats, intimidation, and acts of violence, including, without limitation, murder, robbery, and assault, ;

e.   Promoting and enhancing the reputations and activities of F13 and its members and associates; and

f.   Exposing and punishing F13 members and associates perceived to have violated F13 codes of conduct.

D.   MEANS AND METHODS OF THE ENTERPRISE

11.   The means and methods by which the defendants, and other members and associates of F13, conducted and participated in the conduct of the affairs of F13 included the following:

1          a.    Members and associates of F13 committed, attempted to

2    commit, conspired to commit, and threatened to commit acts of

3    violence, including, without limitation, murder, assaults,

4    intimidation, and extortion, to preserve, protect, and expand F13's

5    criminal operations, and to promote discipline and enforce the rules

6    of F13.

7          b.    Members and associates of F13 promoted a climate of

8    fear through acts of violence and threats to commit acts of violence,

9    and through possession and use of firearms and other weapons.

10          c.    Leaders of F13 disseminated rules and orders to be

11    followed by participants in F13.

12          d.    Members and associates of F13 engaged in the

13    trafficking of controlled substances and firearms to generate income

14    for F13.

15          e.    Members and associates of F13, with the permission of

16    the gang's leaders, "taxed" drug sales, firearms trafficking, and

17    other illegal activity within F13-controlled territory to generate

18    income and to control the criminal activity undertaken within such

19    territory.

20          f.    Leaders and shot callers within F13 controlled the

21    collection and payment of extortionate taxes to the Mexican Mafia to

22    preserve, protect, and expand F13's control of criminal activity

23    undertaken within its territory and to ensure the protection of F13

24    members and associates who are incarcerated.

25

26

27

28

COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS JARAMILLO, PINEDA, OSCAR HERNANDEZ, REYES, VASQUEZ, QUIROZ, and GARCIA]

Paragraphs 1 through 11 of the Introductory Allegations of this First Superseding Indictment are hereby re-alleged and incorporated by reference here.

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about July 31, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants JARAMILLO, PINEDA, OSCAR HERNANDEZ, REYES, VASQUEZ, QUIROZ, and GARCIA, and Co-Conspirator 1 and Co-Conspirator 2, and others known and unknown to the Grand Jury, being persons employed by and associated with F13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the F13 enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

(a) multiple acts involving:

i. Murder, chargeable under California Penal Code Sections 21a, 31, 182, 187, 188, 189, 190, and 664;

ii. Extortion, chargeable under California Penal Code Sections 21a, 31, 182, 518, 519, 520, and 664;

iii. Robbery, chargeable under California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, and 664;

9

(b) multiple acts indictable under Title 18, United States Code, Section 1955 (relating to the prohibition on illegal gambling businesses); and

(c) multiple offenses involving trafficking of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Co-Conspirator 1 and Co-Conspirator 2, and others known and unknown to the Grand Jury, would exercise leadership over F13 on behalf of the Mexican Mafia from within prison by issuing rules and orders to defendant JARAMILLO, and others known and unknown to the Grand Jury, regarding, among other things, the collection of extortionate taxes, the distribution of controlled substances, and who held positions of authority within F13 out on the streets.

2.    Defendant JARAMILLO, and others known and unknown to the Grand Jury, would communicate with Co-Conspirator 2, and others known and unknown to the Grand Jury, to receive direction regarding the business of F13.

3.    Defendants JARAMILLO and PINEDA, and others known and unknown to the Grand Jury, would direct drug trafficking, acts of violence, and other criminal activities within F13 territory; supervise the collection of extortionate taxes; and mediate disputes

both among F13's members and associates and with members of other gangs.

4.    Defendants JARAMILLO, PINEDA, QUIROZ, and GARCIA, and Javier Hernandez, Uribe, Limones, Howard, Rodriguez, Juan Martinez, Javier Martinez, and Leal, and others known and unknown to the Grand Jury, would supply F13 members and associates, and others, with distributable amounts of controlled substances, including, but not limited to, fentanyl, methamphetamine, heroin, cocaine, and marijuana.

5.    Defendants JARAMILLO and PINEDA, and others known and unknown to the Grand Jury, would supply firearms, including handguns and rifles, to members and associates of F13.

6.    Defendants JARAMILLO and OSCAR HERNANDEZ, and Uribe and Howard, and others known and unknown to the Grand Jury, would possess firearms and ammunition to further the drug trafficking and other criminal activities of F13.

7.    Defendants JARAMILLO, PINEDA, OSCAR HERNANDEZ, VASQUEZ, and GARCIA, and Rodriguez, and others known and unknown to the Grand Jury, would operate "casitas" within F13 territory, and elsewhere, from which F13 members and associates would distribute illegal controlled substances and engage in other criminal activities, including illegal gambling.

8.    Defendants JARAMILLO, PINEDA, OSCAR HERNANDEZ, REYES, and VASQUEZ, and Jamie Melendrez, Luis Velasquez, Jesus Zacarias, and Kevin Alexis Ontiveros, and others known and unknown to the Grand Jury, would participate in the disciplining of members and associates of F13 – or others who were deemed to have interfered with the gang's

1  criminal activities – including, without limitation, through the

2  planning of assaults and murders of such individuals.

3       9.    Defendants JARAMILLO, PINEDA, VASQUEZ, and QUIROZ, and

4  others known and unknown to the Grand Jury, would collect

5  extortionate taxes from the sales of controlled substances and other

6  profitable illegal activities within F13-controlled territory.

7  C.   OVERT ACTS

8       In furtherance of the conspiracy and to accomplish its object,

9  defendants JARAMILLO, PINEDA, OSCAR HERNANDEZ, REYES, VASQUEZ,

10  QUIROZ, and GARCIA, and others known and unknown to the Grand Jury,

11  committed and caused to be committed various overt acts, on or about

12  the following dates, within the Central District of California, and

13  elsewhere, including, but not limited to, the following:

14       1.    On December 17, 2015, defendant GARCIA robbed and assaulted

15  I.G., stating that she was from "Florencia gang" and would assault

16  I.G. unless I.G. gave defendant GARCIA her cellphone.

17       2.    On May 4, 2022, defendant JARAMILLO collected $2,000 in

18  extortionate taxes from a "casita" operator, who was, in fact, a

19  confidential human source working with law enforcement ("CHS-1"), for

20  operating a "casita" in F13 territory.

21       3.    On May 4, 2022, defendant JARAMILLO, using coded language

22  during an in-person conversation, told CHS-1 that he could sell CHS-1

23  methamphetamine for $1,000 per pound.

24       4.    On May 12, 2022, defendant JARAMILLO collected $2,000 in

25  extortionate taxes from CHS-1 for operating a "casita" in F13

26  territory.

27

28

5.   On May 12, 2022, defendant JARAMILLO and CHS-1, using coded language in an in-person conversation, discussed the sale of methamphetamine to CHS-1.

6.   On May 13, 2022, defendant JARAMILLO and CHS-1, using coded language in a text message conversation, discussed the sale of methamphetamine to CHS-1.

7.   On September 11, 2022, defendant JARAMILLO, using coded language in a text message conversation, told CHS-1 that he could sell CHS-1 methamphetamine for $1,200 per pound.

8.   On September 28, 2022, defendant JARAMILLO, using coded language in a telephone conversation, told CHS-1 that he could sell CHS-1 two pounds of methamphetamine for $1,200 per pound.

9.   On September 28, 2022, defendant JARAMILLO sold approximately 820 grams of methamphetamine to CHS-1 for $2,400.

10.   On October 17, 2022, defendant REYES, and Melendrez, Velasquez, and Zacarias, and others known and unknown to the Grand Jury, assaulted A.M. outside the El Vaquerito bar in F13 territory, which resulted in A.M.'s death; specifically, defendant REYES kicked and stomped on A.M., and hit him with a baseball bat; Melendrez kicked and punched A.M. repeatedly; Velasquez punched A.M. approximately 22 times; and Zacarias kicked and punched A.M. repeatedly while he was on the ground.

11.   On October 19, 2022, defendant JARAMILLO, using coded language in a telephone conversation, agreed to sell one pound of methamphetamine to CHS-1.

12.   On November 16, 2022, defendant JARAMILLO, using coded language in a series of telephone conversations, told a member of F13 that he and other F13 members, including defendant PINEDA, needed to

13

go to a marijuana shop in F13 territory to intimidate rival drug dealers who were selling marijuana outside of the marijuana shop.

13.  On November 20, 2022, defendant JARAMILLO and a drug supplier, using coded language in a telephone conversation, discussed defendant JARAMILLO purchasing one pound of methamphetamine for $700 from the drug supplier.

14.  On November 23, 2022, defendant JARAMILLO and Javier Hernandez, using coded language in a telephone conversation, discussed that Javier Hernandez had drugs available for defendant JARAMILLO to collect.

15.  On November 23, 2022, defendant JARAMILLO and Javier Hernandez, using coded language in a telephone conversation, discussed an assault that occurred outside of a "casita" in F13 territory and a robbery that occurred in F13 territory.

16.  On November 25, 2022, defendant JARAMILLO and Javier Hernandez, using coded language in a telephone conversation, discussed enforcing F13 rules, specifically that two F13 members may need to be disciplined for violating F13 rules during a robbery of a chain necklace.

17.  On November 26, 2022, defendant JARAMILLO, using coded language in a telephone conversation, told Javier Hernandez that defendant JARAMILLO would tell the victim of the chain necklace robbery that he would be assaulted if he came back to F13 territory.

18.  On November 26, 2022, defendant JARAMILLO, using coded language in a telephone conversation, told the victim of the chain necklace robbery that defendant JARAMILLO was the shot caller of F13 in charge of enforcing F13 rules and that defendant JARAMILLO assaulted an F13 member for violating F13 rules.

14

19.   On November 26, 2022, defendant JARAMILLO, using coded language in a telephone conversation, told a Grape Street gang member ("Grape Street Gang Member 1") that defendant JAMARILLO was going to collect extortionate taxes from an illegal business in F13 territory on behalf of Co-Conspirator 1.

20.   On November 26, 2022, defendants JARAMILLO and VASQUEZ, using coded language in a telephone conversation, discussed and agreed to rob an illegal marijuana shop in F13 territory because the shop failed to pay extortionate taxes to defendant JARAMILLO.

21.   On November 27, 2022, defendant JARAMILLO, using coded language in a telephone conversation, told Grape Street Gang Member 1 that Co-Conspirator 1 would not speak on the phone with another Mexican Mafia member working with Grape Street Gang Member 1.

22.   On November 28, 2022, defendant JARAMILLO, using coded language in a text message, told an illegal business operator in F13 territory that the operator owed $1,000 in extortionate taxes.

23.   On November 28, 2022, defendant JARAMILLO, using coded language in a text message, told an F13 member that the member would be assaulted and disciplined for violating F13 rules.

24.   On November 28, 2022, defendant JARAMILLO, using coded language in a telephone conversation, told an unidentified female that defendant JARAMILLO planned to assault and discipline an F13 member for violating F13 rules.

25.   On November 28, 2022, defendant JARAMILLO, using coded language in a telephone conversation, offered a job working security to an unidentified male at defendant JARAMILLO's "casita" in F13 territory.

26.  On November 29, 2022, defendant JARAMILLO, using coded language in a text message, told an F13 member that she could assault and discipline another member so long as the assaulters were all members of F13.

27.  On December 5, 2022, defendant JARAMILLO, using coded language in a voice message and telephone call, discussed with Javier Hernandez the assault of an F13 member for violating F13 rules.

28.  On December 6, 2022, defendant JARAMILLO, using coded language in a telephone conversation, discussed with an F13 member defendant JARAMILLO's control and directives on selling drugs in F13 territory.

29.  On December 8, 2022, defendants JARAMILLO and VASQUEZ, using coded language in a series of telephone conversations, discussed disciplining and assaulting F13 members for violating F13 rules.

30.  On December 12, 2022, defendants JARAMILLO and VASQUEZ, using coded language in a telephone conversation, discussed the need for defendant VASQUEZ to protect defendant JARAMILLO's illegal marijuana shop while defendants JARAMILLO and PINEDA picked up gambling machines for a "casita."

31.  On December 12, 2022, defendants JARAMILLO and VASQUEZ, using coded language in a telephone conversation, discussed law enforcement raiding a "casita" and defendant JARAMILLO lying to law enforcement that defendant JARAMILLO was only moving "arcade machines around" in the "casita."

32.  On December 13, 2022, defendant JARAMILLO, using coded language in a telephone conversation, told an F13 member to threaten a shop owner in F13 territory for failure to pay extortionate taxes.

16

33.   On January 12, 2023, defendant JARAMILLO, using coded language in a text message, told a drug supplier that defendant JARAMILLO just opened a "casita" with gambling machines.

34.   On March 3, 2023, defendant JARAMILLO, using coded language in a telephone conversation, spoke with an unindicted co-conspirator about defendant JARAMILLO's operation of gambling machines in his "casita."

35.   On April 16, 2023, defendant JARAMILLO, using coded language in a voice message, asked an unknown individual to help coordinate the payment of extortionate taxes to defendant JARAMILLO.

36.   On April 17, 2023, defendant JARAMILLO, using coded language in a voicemail, told an unindicted co-conspirator that he operated an underground casino in F13 territory.

37.   On April 17, 2023, defendant JARAMILLO, using coded language in a series of telephone conversations, discussed distributing a pound of methamphetamine to Limones and defendant QUIROZ.

38.   On April 18, 2023, defendant JARAMILLO, using coded language in a telephone conversation, discussed distributing a pound of methamphetamine to Limones and defendant QUIROZ.

39.   On April 18, 2023, defendants JARAMILLO and QUIROZ, using coded language in a telephone conversation, discussed defendant JARAMILLO distributing a pound of methamphetamine to defendant QUIROZ.

40.   On April 19, 2023, defendant JARAMILLO, using coded language in a telephone conversation, discussed with a "casita" operator defendant JARAMILLO's operation of defendant JARAMILLO's "casita," defendant JARAMILLO's relationship with the Mexican Mafia,

and the collection and payment of extortionate taxes in F13 territory.

41.    On April 20, 2023, at a marijuana dispensary in F13 territory and controlled by defendant JARAMILLO, a Rock Island .45 semi-automatic handgun, eight rounds of .45 caliber ammunition, marijuana, and $2,991 in cash was present.

42.    On April 20, 2023, defendant JARAMILLO, using coded language in a telephone conversation, discussed with Limones distributing drugs in F13 territory and the collection of extortionate taxes.

43.    On April 21, 2023, defendant JARAMILLO, using coded language in a series of telephone conversations, agreed to distribute two pounds of methamphetamine to Limones.

44.    On April 22, 2023, defendant JARAMILLO, using coded language in a telephone conversation, discussed selling a pound of methamphetamine to a drug customer.

45.    On April 23, 2023, defendant JARAMILLO, using coded language in a voice message, told a drug customer that defendant JARAMILLO could help coordinate the sale of drugs to the customer.

46.    On April 23, 2023, defendant JARAMILLO, using coded language in a series of voice messages, explained to unindicted co-conspirators that defendant JARAMILLO controlled who could enter "casitas" in F13 territory and that defendant JARAMILLO ordered the assault and discipline of a banned "casita" customer if the customer entered any F13-controlled "casitas."

47.    On April 23, 2023, defendant JARAMILLO, using coded language in a voice message, told an unindicted co-conspirator that

Blood gang members robbed a marijuana shop in F13 territory controlled by JARAMILLO.

48. On April 23, 2023, defendant JARAMILLO, using coded language in a telephone conversation, encouraged an F13 member to chase after and shoot Blood gang members who recently robbed a marijuana shop in F13 territory.

49. On April 23, 2023, defendant JARAMILLO, using coded language in a series of text messages, explained to the owner of a marijuana shop in F13 territory that the owner should tell would-be robbers that the shop was protected by defendant JARAMILLO and that the shop would not have any problems so long as the owner continued to pay extortionate taxes to defendant JARAMILLO.

50. On April 24, 2023, defendant JARAMILLO received a telephone call from Limones using coded language in which Limones discussed paying extortionate taxes to defendant JARAMILLO.

51. On April 24, 2023, defendant JARAMILLO, using coded language in a telephone conversation, agreed to sell Limones a pound of methamphetamine for $800.

52. On April 25, 2023, defendant JARAMILLO and Javier Martinez, using coded language in a telephone conversation, discussed defendant JARAMILLO selling a pound of methamphetamine to Javier Martinez.

53. On April 25, 2023, defendant JARAMILLO, using coded language in a series of telephone conversations, discussed with an F13 member that defendant JARAMILLO ordered an assault of three F13 members, including Limones, for violating F13 rules.

54. On April 25, 2023, defendant JARAMILLO, using coded language in a series of telephone conversation, discussed with an F13 member that defendant JARAMILLO planned to discipline multiple F13

members, including Limones, for violating F13 rules, stating "I got four more homies to fuckin discipline over another situation and I got one homie to court out the hood fool.  So I got a lot a shit on my plate, you know?"

55.  On April 25, 2023, defendant JARAMILLO possessed approximately 139 grams of methamphetamine; approximately 5.17 grams of heroin; approximately 4.64 grams of cocaine; a Glock, model 19, 9mm caliber pistol, bearing serial number BGAS461; and fifteen rounds of 9mm caliber ammunition.

56.  On April 26, 2023, defendants JARAMILLO and QUIROZ, using coded language in a series of telephone conversations, discussed defendant JARAMILLO distributing methamphetamine to defendant QUIROZ for further distribution to other drug customers.

57.  On April 26, 2023, defendant JARAMILLO, using coded language in a telephone conversation, told a drug customer that defendant JARAMILLO could sell methamphetamine for $800 a pound and heroin for $500 per 25 grams to the customer.

58.  On April 26, 2023, defendant JARAMILLO, using coded language in a telephone conversation, told Limones that defendant JARAMILLO planned to assault him for thirteen seconds for violating F13 rules.

59.  On April 26, 2023, defendant JARAMILLO, using coded language in a series of telephone calls, discussed purchasing cocaine from Howard.

60.  On April 27, 2023, defendants JARAMILLO and QUIROZ, using coded language in a telephone conversation, discussed defendant QUIROZ collecting extortionate taxes on behalf of defendant JARAMILLO.

61.  On April 27, 2023, defendant JARAMILLO, using coded language in a telephone conversation, agreed to distribute a pound of methamphetamine to Limones.

62.  On May 1, 2023, defendant JARAMILLO, using coded language in a telephone conversation, told a drug customer that defendant JARAMILLO could sell a pound of methamphetamine to the customer.

63.  On May 4, 2023, in a "casita" operated by JARAMILLO, a Springfield Armory 9mm handgun, bearing serial number MG954281, 19 rounds of 9mm ammunition, 9 rounds of .380 ammunition, gambling machines, and marijuana were present.

64.  On May 4, 2023, defendant JARAMILLO, in a telephone conversation, told a worker in a marijuana shop in F13 territory controlled by defendant JARAMILLO that the worker should tell robbers inside the story that "Bizzy said to get the fuck out."

65.  On May 4, 2023, defendant JARAMILLO, using coded language in a telephone conversation, explained to a worker in a marijuana shop in F13 territory controlled by defendant JARAMILLO that would-be robbers of stores in F13 territory will retreat if they know that the shop is protected by defendant JARAMILLO and F13.

66.  On May 4, 2023, defendants JARAMILLO and QUIROZ, using coded language in a telephone conversation, discussed defendant JARAMILLO distributing a pound of methamphetamine to defendant QUIROZ and defendant QUIROZ's drug debts to defendant JARAMILLO.

67.  On May 4, 2023, defendant JARAMILLO, using coded language in a voicemail, told an owner of a marijuana shop in F13 territory controlled by defendant JARAMILLO about the security measures defendant JARAMILLO would take to protect stores that paid extortionate taxes.

68.  On May 6, 2023, defendant JARAMILLO, using coded language in a telephone conversation, discussed with an F13 member that only defendant JARAMILLO, as the F13 shot caller, could approve disciplining another F13 member.

69.  On May 7, 2023, defendant JARAMILLO, using coded language in a voice message sent to defendant GARCIA, discussed the execution of a search warrant at a "casita" controlled by defendant JARAMILLO on May 4, 2023.

70.  On May 7, 2023, defendant JARAMILLO, using coded language in a telephone conversation, told a "casita" owner that defendant JARAMILLO's "casita" made approximately $4,000-$5,000 per week and that his "casita" was "raided" by law enforcement approximately two days prior.

71.  On May 7, 2023, defendant JARAMILLO and Juan Martinez, using coded language in a telephone conversation, discussed defendant JARAMILLO distributing two ounces of methamphetamine to Juan Martinez.

72.  On May 9, 2023, defendant JARAMILLO, using coded language in a telephone conversation, told a security worker at a "casita" that defendant JARAMILLO ordered the assault and discipline of a customer who was banned from the "casita."

73.  On May 9, 2023, defendant JARAMILLO, using coded language in a telephone call, warned another "casita" owner that law enforcement was executing a search warrant near the "casita," that it was too late to get rid of his gambling machines, and that the owner should "get all the money out."

74.   On May 10, 2023, defendant JARAMILLO, using coded language in a voice message, told defendant REYES that defendant JARAMILLO assaulted an individual for "disrespecting the spot."

75.   On May 10, 2023, defendant JARAMILLO and Javier Martinez, using coded language in a series of telephone conversations, discussed defendant JARAMILLO selling a pound of methamphetamine to Javier Martinez.

76.   On May 11, 2023, defendants JARAMILLO and GARCIA, using coded language in a telephone conversation, discussed defendant GARCIA's employment in a "casita" controlled by defendant JARAMILLO.

77.   On June 9, 2023, defendant JARAMILLO added contact information in his cellphone for Co-Conspirator 2.

78.   On June 13, 2023, defendants JARAMILLO and GARCIA, using coded language in a telephone conversation, discussed defendant GARCIA giving defendant OSCAR HERNANDEZ methamphetamine and defendant PINEDA money from a "casita" controlled by defendant JARAMILLO.

79.   On June 14, 2023, defendant JARAMILLO, using coded language in a telephone conversation, told a drug customer that defendant JARAMILLO could sell an ounce of methamphetamine for $100 to the customer.

80.   On June 15, 2023, defendant JARAMILLO, using coded language in a voice message, offered a job to defendant VASQUEZ working security at a "casita" in F13 territory controlled by defendant JARAMILLO.

81.   On June 15, 2023, defendant JARAMILLO and Rodriguez, using coded language in a telephone conversation, discussed defendant JARAMILLO selling ounces of methamphetamine to Rodriguez and Rodriguez paying extortionate taxes to defendant JARAMILLO if

23

Rodriguez purchased drugs from a person other than defendant
JARAMILLO.

82. On June 18, 2023, defendant JARAMILLO received a text
message from Rodriguez using coded language in which Rodriguez
discussed purchasing methamphetamine from defendant JARAMILLO.

83. On June 19, 2023, defendant JARAMILLO, using coded language
in a telephone conversation, discussed selling fentanyl pills to a
drug customer.

84. On June 19, 2023, defendant JARAMILLO, using coded language
in a telephone conversation, offered a job to defendant VASQUEZ
working security at a "casita" in F13 territory controlled by
defendant JARAMILLO.

85. On June 19, 2023, defendant JARAMILLO, using coded language
in a telephone conversation, told defendant VASQUEZ that defendant
JARAMILLO was looking for R.A. to assault and discipline R.A. for
violating F13 rules, stating, "Well, I want to find him, and I
fucking give him a check fool.  See if you can help me out on that
one and find out where that [] lives."

86. On June 19, 2023, defendant JARAMILLO, using coded language
in a series of voice messages, told unindicted co-conspirators that
defendant JARAMILLO ordered an assault of R.A., that they should
assault R.A. if they see R.A., and that they should let defendant
JARAMILLO know if they see R.A.

87. On June 19, 2023, defendant JARAMILLO, using coded language
in a telephone conversation, after receiving information from an
unindicted co-conspirator about R.A.'s location, told the unindicted
co-conspirator that he should assault R.A. if he sees R.A., and that
he should let defendant JARAMILLO know if he sees R.A.

88.  On June 19, 2023, defendant JARAMILLO, using coded language
in a telephone conversation, discussed with defendant GARCIA the plan
to assault and discipline R.A., stating, "Hey you guys are at the
spot already? . . .  Tell Drex to grab that thing, and we'll pick him
up right now."

89.  On June 19, 2023, defendants JARAMILLO and OSCAR HERNANDEZ,
each aiding and abetting the other, murdered R.A.

90.  On June 19, 2023, shortly after the murder of R.A.,
defendant JARAMILLO, using coded language in a text message, told
unindicted co-conspirators that defendant JARAMILLO was going to
induct defendant OSCAR HERNANDEZ into the Jokers clique of F13.

91.  On June 19, 2023, shortly after the murder of R.A.,
defendant JARAMILLO, using coded language in a telephone
conversation, told defendant VASQUEZ that defendant JARAMILLO was
going to induct defendant OSCAR HERNANDEZ into the Jokers clique of
F13.

92.  On June 20, 2023, defendant JARAMILLO, using coded language
in a series of text messages, discussed with an unindicted
co-conspirator that defendant JARAMILLO was going to induct defendant
OSCAR HERNANDEZ into the Jokers clique of F13 because defendant OSCAR
HERNANDEZ, "proved [defendant JARAMILLO] solid."

93.  On June 20, 2023, defendant JARAMILLO, using coded language
in a telephone conversation, discussed with a shop owner in F13
territory that the shop owner had to pay extortionate taxes even
though the shop was not an illegal business, stating, "That doesn't
matter . . .  It's it's legal according to the government, but you're
in our neighborhood and we don't go by that government, we go by our
government, you know what I mean? . . .  And if you don't like that,

25

then you can just pack up and leave if that's what you'd like, you

know?"

94.    On June 20, 2023, defendant JARAMILLO, using coded language

in a series of text messages and phone calls, told an unindicted

co-conspirator that defendant JARAMILLO would provide a weapon to the

unindicted co-conspirator so that he could protect himself during a

dispute.

95.    On June 20, 2023, defendants JARAMILLO and PINEDA travelled

to a shop in F13 territory so defendant JARAMILLO could provide a

weapon to an unindicted co-conspirator.

96.    On June 21, 2023, defendant JARAMILLO and Rodriguez, using

coded language in a telephone conversation, discussed defendant

JARAMILLO selling drugs to Rodriguez.

97.    On June 21, 2023, defendant JARAMILLO, using coded language

in a voice message, explained to defendant VASQUEZ that defendant

OSCAR HERNANDEZ deserved to be in the Jokers clique of F13 because of

defendant OSCAR HERNANDEZ's murder of R.A., comparing it to murders

that defendant JARAMILLO previously committed, specifically that

defendant OSCAR HERNANDEZ "passed the test with fly[ing] colors . . .

me and you have done one, I've done one with psycho, with bull dog .

. . and this [] did a better one then anything that I've seen between

the 3 of you fool, you get what I'm saying . . . he passed with

flying colors . . . cuz like I said everybody who's done one hasn't

passed it with flying colors . . . If we're not looking for that, the

fuck are we looking for, you know what I'm saying?"

98.    On June 21, 2023, defendant JARAMILLO, using coded language

in a telephone conversation, discussed with a drug supplier the

purchase of methamphetamine for $675 per pound.

99.   On June 22, 2023, defendant JARAMILLO, using coded language in a telephone conversation, discussed selling a pound of methamphetamine on consignment to a drug customer near the area of Wilmington Avenue and 60th Street in F13 territory.

100.   On June 22, 2023, defendants JARAMILLO and PINEDA travelled to the area of Wilmington Avenue and 60th Street in F13 territory.

101.   On June 23, 2023, defendant JARAMILLO, using coded language in a telephone conversation, told a drug distributor that he would owe defendant JARAMILLO extortionate taxes if he did not buy his entire drug supply from defendant JARAMILLO.

102.   On June 24, 2023, defendants JARAMILLO and GARCIA, using coded language in a telephone conversation, discussed selling half of a pound of methamphetamine to a drug customer.

103.   On June 25, 2023, defendants JARAMILLO and VASQUEZ, using coded language in a telephone conversation, discussed initiating defendant OSCAR HERNANDEZ into the Jokers clique of F13 through an assault.

104.   On June 27, 2023, defendant JARAMILLO, using coded language in a telephone conversation, discussed with an unindicted co-conspirator defendant OSCAR HERNANDEZ's initiation into the Jokers clique of F13.

105. On June 30, 2023, defendant JARAMILLO received a text message in coded language where Uribe asked defendant JARAMILLO for a half pound of methamphetamine.

106.   On June 30, 2023, defendant JARMILLO, in a text message, instructed Uribe to send a drug payment to Leal's CashApp account.

107. On July 2, 2023, defendants JARAMILLO and PINEDA, and Ontiveros, assaulted and disciplined E.N. for violating F13 rules.

108. On July 6, 2023, in a "casita" located in F13 territory and controlled by defendant JARAMILLO, approximately 43.94 grams of methamphetamine, a Glock handgun, five rounds of 9mm ammunition, and five gambling machines were present.

109. On July 6, 2023, defendant JARAMILLO, using coded language in a text message, told an unindicted co-conspirator that the co-conspirator's "casita" was just raided by law enforcement and that defendant JARAMILLO would instruct an F13 member to protect the illegal gambling machines at the "casita."

110. On July 9, 2023, defendants JARAMILLO and OSCAR HERNANDEZ, using coded language in a series of text messages, discussed selling drugs.

111. On July 10, 2023, defendant JARAMILLO and Juan Martinez, using coded language in a series of text messages, discussed defendant JARAMILLO distributing an ounce of methamphetamine to Juan Martinez and Juan Martinez sending the payment to Leal's CashApp account.

112. On July 14, 2023, defendant JARAMILLO received a text message from Uribe asking to buy a pound of methamphetamine for $650.

113. On July 14, 2023, defendant JARAMILLO and Juan Martinez, using coded language in a series of text messages, discussed defendant JARAMILLO distributing drugs to a someone in jail.

114. On July 15, 2023, defendant JARAMILLO, in a series of voice and text messages, discussed selling Uribe a pound of methamphetamine for $600 and told Uribe that defendant JARAMILLO did

not need an assault rifle as collateral for the drug deal because he already had plenty of assault rifles.

115. On July 16, 2023, defendant JARAMILLO, using coded language in a text message, told an F13 member that defendant JARAMILLO wanted to meet and explain F13 rules for selling drugs in F13 territory.

116. On July 18, 2023, defendant JARAMILLO, using coded language in a text message, agreed to sell a pound of methamphetamine to Uribe for $1,000 and instructed Uribe to send the payment to Leal's CashApp account.

117. On July 23, 2023, defendant JARAMILLO, using coded language in a text message, discussed with an F13 member "casita" operations, specifically that defendant OSCAR HERNANDEZ "just dropped off the keys" to a "casita."

118. On July 24, 2023, at approximately 5:47 p.m., defendants JARAMILLO and PINEDA, using coded language in a series of text messages, discussed going to 59th Street in F13 territory to execute a "gang plan" and discipline the Malditos clique of F13 for disrespecting the Locos clique.

119. On July 24, 2023, at approximately 7:23 p.m., defendants JARAMILLO and PINEDA, each aiding and abetting the other, murdered D.E., a member of the Malditos clique of F13, on 59th Street in F13 territory.

120. On July 24, 2023, defendants JARAMILLO and PINEDA, in a series of text messages, discussed the operation of a "casita" and the collection of extortionate proceeds from a "casita."

121. On July 25, 2023, defendant JARAMILLO, using coded language in a text message, threatened an unindicted co-conspirator

29

regarding the payment of extortionate taxes, stating that "Ur life depends on it . . . I'm calling in regard to the money u owe . . . if I don't hear from u soon I'll pay a visit to these addresses I have here.  Have a good night."

122.  On July 26, 2023, defendant JARAMILLO, using coded language in a series of text messages, told an F13 member that defendant JARAMILLO would issue discipline and assaults for anyone violating F13 rules regarding graffiti in F13 territory.

123.  On July 26, 2023, defendant JARAMILLO, in a series of text messages, discussed with Co-Conspirator 2 the indictment of another gang member.

124.  On July 26, 2023, defendant GARCIA, using coded language in a text message, asked to purchase an ounce of methamphetamine from defendant JARAMILLO for $150.

125.  On July 26, 2023, defendant JARAMILLO and Javier Martinez, using coded language in a text message and telephone conversation, discussed defendant JARAMILLO selling a pound of methamphetamine to Javier Martinez.

126.  On July 27, 2023, defendant JARAMILLO, using coded language in a series of text messages, told an F13 member that defendant JARAMILLO would issue discipline and assaults for anyone violating F13 rules regarding graffiti in F13 territory.

127.  On July 27, 2023, defendant JARAMILLO, in a text message, agreed to sell Uribe a half pound of methamphetamine for $500 and an assault rifle as additional collateral for the transaction.

128.  On July 28, 2023, defendant JARAMILLO, using coded language in a series of text messages, discussed selling one pound of methamphetamine to Limones in exchange for $1,000.

129.  On July 28, 2023, defendant JARAMILLO, using coded
language in a series of text messages, discussed selling
methamphetamine to Uribe.

130.  On July 29, 2023, defendant JARAMILLO, using coded
language in a text message conversation, told defendant PINEDA to
deliver a firearm to defendant OSCAR HERNANDEZ, who was working as a
security guard at a "casita" controlled by defendant JARAMILLO, and
asked defendant PINEDA to pick up proceeds from the illegal
operations of the "casita" for defendant JARAMILLO.

131.  On July 29, 2023, defendant JARAMILLO, using coded
language in a text message conversation, told defendant OSCAR
HERNANDEZ that defendant PINEDA would deliver a firearm to him at a
"casita" controlled by defendant JARAMILLO.

132.  On July 31, 2023, defendant JARAMILLO and Limones, using
coded language in a series of text messages, discussed an assault
Limones committed on behalf of F13.

133.  On July 31, 2023, defendants JARAMILLO and PINEDA, using
coded language in a text message and telephone conversation,
discussed selling an ounce of methamphetamine to a drug customer.

134.  On July 31, 2023, defendant JARAMILLO, using coded
language in a series of text messages, praised Juan Martinez for
participating in an assault.

135.  On August 1, 2023, defendant JARAMILLO, using coded
language in a text message conversation, told defendant OSCAR
HERNANDEZ to only "pull out" firearms "on the customers only when we
need to," to which defendant OSCAR HERNANDEZ replied, "Yes sir."

136.   On August 1, 2023, defendant JARAMILLO, in a text message, told a shop owner in F13 territory that defendant JARAMILLO was going to come to the shop to collect extortionate taxes.

137.   On August 1, 2023, defendant JARAMILLO, using coded language in a series of text messages, discussed with an incarcerated F13 member the discipline and assault of other F13 members for violating F13 rules.

138.   On August 1, 2023, defendant JARAMILLO, using coded language in a series of text messages, instructed an unindicted co-conspirator to send debt payments to Leal's CashApp account.

139.   On August 1, 2023, defendant JARAMILLO, using coded language in a series of text messages, discussed selling Uribe and a drug customer one pound of methamphetamine for $1,000.

140.   On August 2, 2023, defendant JARAMILLO, using coded language in a voice message, told an unindicted co-conspirator that defendant JARAMILLO recently assaulted a member of the 64s clique of F13 (E.N.), explaining that defendant JARAMILLO and others "yanked him out the car and beat the fucking brakes out of that fool . . . [and] slept his ass . . . [and he] woke up in the hospital."

141.   On August 2, 2023, defendant JARAMILLO, while driving away from a marked police vehicle attempting to conduct a traffic stop of defendant JARAMILLO, rolled down his driver side window and discarded from a plastic bag approximately 2.777 grams of methamphetamine onto the street.

142.   On August 2, 2023, defendant JARAMILLO possessed, in his home, approximately 961 grams of fentanyl; approximately 237 grams of heroin; approximately 200.45 grams of methamphetamine; a Smith &

Wesson, model SW9VE, 9mm caliber pistol, bearing serial number DSU2742; and 90 rounds of 9mm caliber ammunition.

143.  On August 2, 2023, defendant JARAMILLO possessed, in his home, approximately $37,000 in extortionate proceeds, some of which was contained in marked envelopes for Co-Conspirator 2 and an F13 member recently convicted in connection with the murder of an off-duty Los Angeles Police Department officer.

144.  On August 2, 2023, defendant PINEDA, using coded language in a text message, told defendant JARAMILLO that defendant PINEDA collected extortionate taxes from a "casita" located in F13 territory.

145.  On August 4, 2023, defendant JARAMILLO and Leal, using coded language in a telephone conversation, discussed collecting a drug debt from Uribe and assaulting him if he did not pay.

146. On August 4, 2023, defendant PINEDA and Uribe, using coded language in a series of text messages, discussed a deal in which Uribe would supply defendant PINEDA with heroin in exchange for defendant PINEDA cancelling Uribe's debt to defendant JARAMILLO.

147.  On August 5, 2023, defendant JARAMILLO received a text message in coded language from Uribe asking for one pound of methamphetamine.

148.  On August 6, 2023, defendant PINEDA, using coded language in a voice message, told Uribe that a deal for heroin between defendant PINEDA and Uribe was cancelled, and instructed Uribe to contact Leal about Uribe's outstanding debt to defendant JARAMILLO.

149.  On August 6, 2023, defendant PINEDA received a text message in coded language from Uribe asking for two pounds of methamphetamine.

150.  On August 7, 2023, defendant PINEDA and Uribe, using coded language in a series of text messages, discussed a transaction for heroin.

151.  On August 11, 2023, defendant PINEDA, using coded language in a series of text messages, discussed selling both half-ounce and pound quantities of methamphetamine with a drug customer.

152.  On August 11, 2023, defendant PINEDA received a text message in coded language from Uribe offering heroin to defendant PINEDA.

153.  On August 13, 2023, defendant PINEDA, using coded language in a series of text messages, told Rodriguez that he would collect a payment of extortionate taxes from him shortly.

154.  On August 14, 2023, defendant PINEDA, using coded language in a text and a voice message, discussed with another F13 member purchasing and selling 700 grams of heroin.

155.  On August 15, 2023, defendant PINEDA, using coded language in a series of text messages, told Rodriguez that he would collect a payment of extortionate taxes from him.

156.  On August 17, 2023, defendant PINEDA, using coded language in a series of text messages, discussed with a "casita" employee the operation of illegal gambling machines in a "casita."

157.  On August 19, 2023, defendant PINEDA, using coded language in a series of text messages, discussed with Rodriguez collecting a payment of extortionate taxes.

158. On August 22, 2023, defendant PINEDA, using coded language in a series of text messages, discussed with Rodriguez collecting a payment of extortionate taxes.

159.  On August 23, 2023, defendants PINEDA and GARCIA, using coded language in a series of text messages, discussed "casita" profits and operations.

160. On August 25, 2023, defendant JARAMILLO, using coded language in a telephone conversation, instructed Leal to threaten Uribe for failing to pay a debt owed to defendant JARAMILLO and to tell Uribe, "You have until the 15th to cover that money. . . This is the last time I will get at you over the phone."

161.  On August 28, 2023, defendant OSCAR HERNANDEZ, referring to the Jokers clique of F13, tagged "FX3 JKS" graffiti on a wall in F13 territory.

162.  On August 29, 2023, defendant REYES, an F13 member, and an F13 associate robbed the Jewels on Lake jewelry store in Pasadena, California, of approximately $751,406 in merchandise during a smash-and-grab robbery using hammers and bear spray.

163.  On October 26, 2023, in a "casita" located in F13 territory controlled by defendant JARAMILLO, approximately 1,363.255 grams of methamphetamine, a Smith & Wesson handgun with an obliterated serial number, ammunition, a tactical vest, and four gambling machines were present.

D.  <u>NOTICE OF SPECIAL SENTENCING ALLEGATIONS</u>

The Grand Jury further alleges that:

1.  Beginning on a date unknown to the Grand Jury, and continuing to on or about July 31, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants JARAMILLO, PINEDA, QUIROZ, and GARCIA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly

and intentionally (i) distribute, and (ii) possess with intent to distribute:

       (a)    at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), (b)(1)(A)(viii);

       (b)    at least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), (b)(1)(A)(vi); and

       (c)    at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), (b)(1)(A)(i).

    2.    On or about October 17, 2022, in Los Angeles County, within the Central District of California, defendant REYES and others known and unknown to the Grand Jury, each aiding and abetting the other, unlawfully, willfully, deliberately, and with premeditation killed with malice aforethought victim A.M., in violation of California Penal Code Sections 31, 187, 189, and 190.

    3.    On or about June 19, 2023, in Los Angeles County, within the Central District of California, defendants JARAMILLO and OSCAR HERNANDEZ, and others known and unknown to the Grand Jury, each aiding and abetting the other, unlawfully, willfully, deliberately, and with premeditation killed with malice aforethought victim R.A., in violation of California Penal Code Sections 31, 187, 189, and 190.

    4.    On or about July 24, 2023, in Los Angeles County, within the Central District of California, defendants JARAMILLO and PINEDA,

1  and others known and unknown to the Grand Jury, each aiding and

2  abetting the other, unlawfully, willfully, deliberately, and with

3  premeditation killed with malice aforethought victim D.E., in

4  violation of California Penal Code Sections 31, 187, 189, and 190.

1                                       COUNT TWO

2                        [18 U.S.C. §§ 1959(a)(3), 2(a)]

3                [DEFENDANTS MELENDREZ, VELASQUEZ, and ZACARIAS]

4        1.    Paragraphs 1 through 11 of the Introductory Allegations of

5 this First Superseding Indictment are re-alleged and incorporated by

6 reference here.

7        2.    At all times relevant to this First Superseding Indictment,

8 F13, including its leaders, members, and associates, constituted an

9 "enterprise," as defined by Title 18, United States Code, Section

10 1959(b)(2), that is, a group of individuals associated in fact,

11 although not a legal entity, which was engaged in, and the activities

12 of which affected, interstate and foreign commerce.  The enterprise

13 constituted an ongoing organization whose members functioned as a

14 continuing unit for a common purpose of achieving the objectives of

15 the enterprise.

16        3.    At all times relevant to this First Superseding Indictment,

17 F13, through its leaders, members, and associates, engaged in

18 racketeering activity, as defined in Title 18, United States Code,

19 Sections 1959(b)(1) and 1961(1), consisting of:

20       (a) multiple acts involving:

21       i.  Murder, in violation of California Penal Code Sections 21a,

22 31, 182, 187, 188, 189, 190, and 664;

23       ii.  Extortion, in violation of California Penal Code Sections

24 21a, 31, 182, 518, 519, 520, and 664;

25       ii.  Robbery, in violation of California Penal Code Sections

26 21a, 31, 182, 211, 212, 212.5, 213, and 664;

27

28

(b) multiple acts indictable under Title 18, United States Code, Section 1955 (relating to the prohibition on illegal gambling businesses); and

(c) multiple offenses involving trafficking of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

4.   On or about October 17, 2022, in Los Angeles County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in F13, an enterprise engaged in racketeering activity, defendants JAIME MELENDREZ, also known as ("aka") "Mono," LUIS VELASQUEZ, aka "Louie the Barber," and JESUS ZACARIAS, aka "Mochis," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly assaulted A.M., resulting in serious bodily injury, in violation of California Penal Code Sections 31 and 245(a)(4).

COUNT THREE

[18 U.S.C. §§ 1959(a)(3), 2(a)]

[DEFENDANTS JARAMILLO, PINEDA, and ONTIVEROS]

1.    Paragraphs 1 through 11 of the Introductory Allegations of this First Superseding Indictment, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are hereby re-alleged and incorporated by reference here.

2.    On or about July 2, 2023, in Los Angeles County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in F13, an enterprise engaged in racketeering activity, defendants CELERINO JARAMILLO, also known as ("aka") "Bizzy," HUGO ARMANDO PINEDA, aka "Menace," and KEVIN ALEXIS ONTIVEROS, aka "Lil Bandit," each aiding and abetting the other, knowingly assaulted E.N., resulting in serious bodily injury, in violation of California Penal Code Section 31 and 245(a)(4).

COUNT FOUR

[21 U.S.C. § 846]

[DEFENDANTS JARAMILLO, PINEDA, QUIROZ, GARCIA, JAVIER HERNANDEZ, URIBE, LIMONES, HOWARD, RODRIGUEZ, JUAN MARTINEZ, JAVIER MARTINEZ, and LEAL]

1.    Paragraphs 1 through 11 of the Introductory Allegations of this First Superseding Indictment are re-alleged and incorporated by reference here.

A.    OBJECTS OF THE CONSPIRACY

2.    Beginning on a date unknown, and continuing to on or about July 31, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants JARAMILLO, PINEDA, QUIROZ, GARCIA, JAVIER HERNANDEZ, URIBE, LIMONES, HOWARD, RODRIGUEZ, JUAN MARTINEZ, JAVIER MARTINEZ, and LEAL, and Co-Conspirator 1 and Co-Conspirator 2, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally (i) distribute, and (ii) possess with intent to distribute:

(a)    At least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii);

(b)    At least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi);

(c)    At least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug

controlled substance, in violation of Title 21, United States Code,

Sections 841(a)(1), (b)(1)(A)(i); and

          (d) Cocaine, a Schedule II narcotic drug controlled

substance, in violation of Title 21, United States Code, Sections

841(a)(1), (b)(1)(C).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

      ACCOMPLISHED

      3.    The Grand Jury re-alleges and incorporates by reference as

paragraphs 1 through 9 of Section B of Count One of this First

Superseding Indictment here.

C.    OVERT ACTS

      In furtherance of the conspiracy, and to accomplish the objects

of the conspiracy, on or about the following dates, defendants

JARAMILLO, PINEDA, QUIROZ, GARCIA, JAVIER HERNANDEZ, URIBE, LIMONES,

HOWARD, RODRIGUEZ, JUAN MARTINEZ, JAVIER MARTINEZ, and LEAL, and

others known and unknown to the Grand Jury, committed various overt

acts, within the Central District of California, and elsewhere,

including, but not limited to, overt acts 3, 5-9, 11, 13-14, 28, 37-

39, 42-45, 51-52, 55-57, 59, 61-62, 66, 71, 75, 78-79, 81-83, 96, 98-

99, 101-102, 105-106, 108, 110-116, 124-125, 127-129, 133, 139, 141-

142, 145-152, 154, 160, and 163, as set forth in Count One, which are

hereby re-alleged and incorporated by reference here, and the

following:

      1.    On January 19, 2023, defendant JAVIER HERNANDEZ, using

coded language in a telephone conversation, discussed with a drug

supplier purchasing one pound of methamphetamine for $700.

2.   On January 26, 2023, defendant JAVIER HERNANDEZ, using coded language in a series of telephone conversations, agreed to sell cocaine to a drug customer.

3.   On January 27, 2023, defendant JAVIER HERNANDEZ, using coded language in a telephone conversation, agreed to facilitate a methamphetamine transaction for a drug customer.

4.   On May 18, 2023, defendant HOWARD possessed approximately 341 grams of cocaine base; approximately 115.1 grams of cocaine; approximately 1.3 grams of methamphetamine; a Israeli Weapons Industries Ltd, model Desert Eagle pistol, bearing serial number 47303402; a Smith & Wesson model M&P 9, 9mm caliber pistol, bearing serial number NJT1723; a Glock model 20 Gen4, 10mm Auto caliber pistol, bearing serial number BBLS109; 42 rounds of 9mm caliber ammunition; 20 rounds of 5.56mm caliber ammunition; and 12 rounds of .40 caliber ammunition.

5.   On September 26, 2023, defendant URIBE possessed approximately 11.8 grams of methamphetamine; a short-barreled, 9 inches AR 15 style ghost gun rifle; 21 rounds of .223 caliber ammunition; a Remington model 1100 Sporting 410, .410 caliber shotgun, bearing serial number R261093H; and fifteen rounds of 9mm caliber ammunition.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT JARAMILLO]

On or about September 28, 2022, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly and intentionally distributed at least fifty grams, that is, approximately 820 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT JARAMILLO]

On or about April 25, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 139 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT JARAMILLO]

On or about April 25, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT JARAMILLO]

On or about April 25, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly and intentionally possessed with intent to distribute cocaine, a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

[DEFENDANT HOWARD]

On or about May 18, 2023, in Los Angeles County, within the Central District of California, defendant TIMOTHY SHINGINRA HOWARD, also known as "Maddog," knowingly and intentionally possessed with intent to distribute least 28 grams, that is, approximately 341 grams, of a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic drug controlled substance.

1

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT HOWARD]

On or about May 18, 2023, in Los Angeles County, within the Central District of California, defendant TIMOTHY SHINGINRA HOWARD, also known as "Maddog," knowingly and intentionally possessed with intent to distribute methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT HOWARD]

On or about May 18, 2023, in Los Angeles County, within the Central District of California, defendant TIMOTHY SHINGINRA HOWARD, also known as "Maddog," knowingly and intentionally possessed with intent to distribute cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT JARAMILLO]

On or about August 2, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 203.227 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

[DEFENDANT JARAMILLO]

On or about August 2, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly and intentionally possessed with the intent to distribute at least 400 grams, that is, approximately 961 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenlyethyl)-4-piperidinyl] propenamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT JARAMILLO]

On or about August 2, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT URIBE]

On or about September 26, 2023, in Los Angeles County, within the Central District of California, defendant DAVID URIBE, also known as "Shorty," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 11.8 grams, of methamphetamine, a Schedule II controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SIXTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT JARAMILLO]

On or about April 25, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly possessed a firearm, namely, a Glock, model 19, 9mm caliber pistol, bearing serial number BGAS461, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Four of this First Superseding Indictment, Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), as charged in Count Six of this First Superseding Indictment, Possession with Intent to Distribute Heroin, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Count Seven of this First Superseding Indictment, and Possession with Intent to Distribute Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Count Eight of this First Superseding Indictment.

COUNT SEVENTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT HOWARD]

On or about May 18, 2023, in Los Angeles County, within the Central District of California, defendant TIMOTHY SHINGINRA HOWARD, also known as "Maddog," knowingly possessed firearms, namely, an Israeli Weapons Industries Ltd, model Desert Eagle pistol, bearing serial number 47303402, and a Smith & Wesson model M&P 9, 9mm caliber pistol, bearing serial number NJT1723, and a Glock model 20 Gen4, 10mm Auto caliber pistol, bearing serial number BBLS109, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Four of this First Superseding Indictment, Possession with Intent to Distribute Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(iii), as charged in Count Nine of this First Superseding Indictment, Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Count Ten of this First Superseding Indictment, and Possession with Intent to Distribute Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Count Eleven of this First Superseding Indictment.

COUNT EIGHTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT JARAMILLO]

On or about August 2, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly possessed a firearm, namely, a Smith & Wesson, Model SW9VE, 9mm caliber pistol, bearing serial number DSU2742, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Four of this First Superseding Indictment, Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), as charged in Count Twelve of this First Superseding Indictment, Possession with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), as charged in Count Thirteen of this First Superseding Indictment, and Possession with Intent to Distribute Heroin, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Count Fourteen of this First Superseding Indictment.

COUNT NINETEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT URIBE]

On or about September 26, 2023, in Los Angeles County, within the Central District of California, defendant DAVID URIBE, also known as "Shorty," knowingly possessed a firearm, namely, a Remington model 1100 Sporting 410, .410  caliber shotgun, bearing serial number R261093H, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Four of this First Superseding Indictment, and Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(B)(A)(viii), as charged in Count Fifteen of this First Superseding Indictment.

COUNT TWENTY

[18 U.S.C. § 922(g)(1)]

[DEFENDANT JARAMILLO]

On or about April 25, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly possessed the following firearm and ammunition, in and affecting interstate and foreign commerce:

(1)   a Glock, model 19, 9mm caliber pistol, bearing serial number BGAS461;

(2)   nine rounds of Winchester 9mm caliber ammunition;

(3)   three rounds of Federal Cartridge 9mm caliber ammunition; and

(4)   three rounds of Tulammo 9mm caliber ammunition.

Defendant JARAMILLO possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)   Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Orange, case number 13WF1323, on or about September 15, 2017; and

(2)   Assault with a Deadly Weapon, in violation of California Penal Code Section 245(A)(2), in the Superior Court for the State of California, County of Los Angeles, Case Number VA129916, on or about March 6, 2014.

COUNT TWENTY-ONE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT HOWARD]

On or about May 18, 2023, in Los Angeles County, within the Central District of California, defendant TIMOTHY SHINGINRA HOWARD, also known as "Maddog," knowingly possessed the following firearms and ammunition, in and affecting interstate and foreign commerce:

(1)  an Israeli Weapons Industries Ltd, model Desert Eagle pistol, bearing serial number 47303402;

(2)  a Smith & Wesson model M&P 9, 9mm caliber pistol, bearing serial number NJT1723;

(3)  a Glock model 20 Gen4, 10mm Auto caliber pistol, bearing serial number BBLS109;

(4)  33 rounds of ZSR 9mm Luger caliber ammunition;

(5)  20 rounds of Poongsan Defense 5.56mm caliber ammunition;

(6)  10 rounds of ProGrade .40 S&W caliber ammunition;

(7)  9 rounds of CCI/Speer 9mm Luger caliber ammunition;

(8)  1 round of Winchester .40 S&W caliber ammunition; and

(9)  1 round of Hornady .40 S&W caliber ammunition.

Defendant HOWARD possessed such firearms and ammunition knowing that he had previously been convicted of at least the following felony crime, which is punishable by a term of imprisonment exceeding one year: Attempted Murder, in violation of California Vehicle Code Sections 664 and 187(a), in the Superior Court of the State of California, County of Los Angeles, case number BA219757, on or about April 10, 2002.

COUNT TWENTY-TWO

[18 U.S.C. § 922(g)(1)]

[DEFENDANT JARAMILLO]

On or about August 2, 2023, in Los Angeles County, within the Central District of California, defendant CELERINO JARAMILLO, also known as "Bizzy," knowingly possessed the following firearm and ammunition, in and affecting interstate and foreign commerce:

(1)  Smith & Wesson, Model SW9VE, 9mm caliber pistol, bearing serial number DSU2742;

(2)  34 rounds of Remington Peters 9mm caliber ammunition;

(3)  20 rounds of Federal 9mm caliber ammunition;

(4)  10 rounds of Precision Made Cartridges 9mm caliber ammunition;

(5)  9 rounds of Federal 9mm caliber ammunition;

(6)  6 rounds of Winchester 9mm caliber ammunition;

(7)  4 rounds of Western Cartridge Company 9mm caliber ammunition;

(8)  3 rounds of Sellier & Bellot 9mm caliber ammunition;

(9)  2 rounds of Blazer 9mm caliber ammunition;

(10) 1 round of Giulio, Fiocchi, Lecco9mm caliber ammunition; and

(11) 1 round of Speer 9mm caliber ammunition.

Defendant JARAMILLO possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)  Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior

1    Court of the State of California, County of Orange, case number

2    13WF1323, on or about September 15, 2017; and

3          (2)    Assault with a Deadly Weapon, in violation of California

4    Penal Code Section 245(A)(2), in the Superior Court for the State of

5    California, County of Los Angeles, Case Number VA129916, on or about

6    March 6, 2014.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWENTY-THREE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT URIBE]

On or about September 26, 2023, in Los Angeles County, within the Central District of California, defendant DAVID URIBE, also known as "Shorty," knowingly possessed the following firearm and ammunition, in and affecting interstate and foreign commerce:

(1)  a Remington model 1100 Sporting 410, .410 caliber shotgun, bearing serial number R261093H;

(2)  20 rounds of CCI/Speer .223 Remington caliber ammunition;

(3)  20 rounds of Poongsan Defense 5.56mm caliber ammunition;

(4)  11 rounds of Lake City 5.56mm NATO caliber ammunition;

(5)  4 rounds of Poongsan Metals Corp. .223 Remington caliber ammunition;

(6)  1 round of Norinco 5.56mm caliber ammunition;

(7)  1 round of Lake City .223 Remington caliber ammunition;

(8)  1 round of Winchester Luger caliber ammunition;

(9)  1 round of CCI/Speer 9mm Luger caliber ammunition; and

(10) 1 round of .223 Remington caliber ammunition.

Defendant URIBE possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)  Evade Police Officer, in violation of California Vehicle Code Section 2800.2, in the Superior Court of the State of California, County of Los Angeles, case number VA151579, on or about November 30, 2021;

1      (2)  Taking of a Vehicle with a Prior, in violation of

2  California Penal Code Section 666.5, in the Superior Court of the

3  State of California, County of San Bernardino, case number

4  FSB17003386, on or about October 23, 2017;

5      (3)  Vehicle Theft, in violation of California Vehicle Code

6  Section 10851(a), in the Superior Court of the State of California,

7  County of Orange, case number 15NF0896, on or about May 6, 2015;

8      (4)  Buying or Receiving Stolen Property, in violation of

9  California Penal Code Section 496(d), in the Superior Court of the

10  State of California, County of San Bernardino, case number

11  FVI1404152, on or about November 13, 2014;

12      (5)  Obstructing or Resisting an Officer, in violation of

13  California Penal Code Section 69, in the Superior Court of the State

14  of California, County of San Bernardino, case number FVI1404152, on

15  or about November 13, 2014;

16      (6)  Vehicle Theft, in violation of California Vehicle Code

17  Section 10851(a), in the Superior Court of the State of California,

18  County of Los Angeles, case number KA106175, on or about August 25,

19  2014;

20      (7) Vandalism, in violation of California Penal Code Section

21  594(a), in the Superior Court of the State of California, County of

22  Los Angeles, case number KA098783, on or about March 11, 2013; and

23      (8) Assault with a Deadly Weapon Not Firearm, in violation of

24  California Penal Code Section 245(a)(1), in the Superior Court of the

25  State of California, County of San Bernardino, case number

26  FVI1000161, on or about February 9, 2010.

27

28

64

COUNT TWENTY-FOUR

[26 U.S.C. § 5861(d)]

[DEFENDANT URIBE]

On or about September 26, 2023, in Los Angeles County, within the Central District of California, defendant DAVID URIBE, also known as "Shorty," knowingly possessed a firearm, namely, an AR-style semiautomatic rifle without a serial number, with a barrel of less than 16 inches in length, which defendant URIBE knew to be a firearm and a short-barreled rifle, as defined in Title 26, United States Code, Sections 5845(a)(3) and 5845(c), and which had not been registered to defendant URIBE in the National Firearms Registration and Transfer Record, as required by Chapter 53, Title 26, United States Code.

1

COUNT TWENTY-FIVE

2

[18 U.S.C. § 1623(a)]

3

[DEFENDANT LEAL]

4     On or about October 3, 2024, in Los Angeles County, within the

5 Central District of California, defendant LYNETTE LEAL, also known as

6 ("aka") "Alyssa Leal," aka "China," while under oath as a witness in

7 a case then being tried before the United States District Court for

8 the Central District of California in <u>United States v. Celerino</u>

9 <u>Jaramillo</u>, No. 2:23-cr-411-HDV, knowingly did make a false material

10 declaration, that is to say:

11     "I am the wife of Celerino Jaramillo . . . . we have been

12     married for one [year]."

13     At the time and place aforesaid, the Court was asked to

14 determine whether defendant Celerino Jaramillo should be released on

15 bond pending trial and if so, whether defendant LEAL was an

16 appropriate surety for defendant Celerino Jaramillo's bond.  It was a

17 matter material to said determination the scope of defendant

18 Jaramillo's relationship with defendant LEAL, including whether

19 defendant LEAL was married to defendant Jaramillo and for how long.

20

21

22

23

24

25

26

27

28

1              FORFEITURE ALLEGATION ONE

2                 [18 U.S.C. § 1963]

3       1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice

4   is hereby given that the United States of America will seek

5   forfeiture as party of any sentence, pursuant to Title 18, United

6   States Code, Section 1963, and Title 28 United States Code, Section

7   2461(c), in the event of any defendant's conviction of the offense

8   set forth in Count One of this First Superseding Indictment.

9       2.    Any defendant so convicted shall forfeit to the United

10  States of America the following:

11          (a)   Any interest the convicted defendant has acquired or

12  maintained as a result of any such offense;

13          (b)   Any interest in, security of, claim against, or

14  property or contractual right of any kind affording a source or

15  influence over, any enterprise which the convicted defendant has

16  established, operated, controlled, conducted, or participated in the

17  conduct of, as a result of any such offense;

18          (c)   Any property constituting, or derived from, any

19  proceeds which the person obtained, directly or indirectly, from

20  racketeering activity or unlawful debt collection as a result of any

21  such offense; and

22          (d)   To the extent such property is not available for

23  forfeiture, a sum of money equal to the total value of the property

24  described in subparagraphs (a), (b), and (c).

25      3.    Pursuant to Title 18, United States Code, Section 1963(m),

26  any defendant so convicted shall forfeit substitute property, up to

27  the total value of the property described in the preceding paragraph

28  if, as the result of any act or omission of said defendant, the

property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1                       FORFEITURE ALLEGATION TWO

2         [18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c)]

3         1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Sections 981(a)(1)(C), 924(d), and Title 28,

7    United States Code, Section 2461(c), in the event of any defendant's

8    conviction of the offenses set forth in any of Counts Two through

9    Three of this First Superseding Indictment.

10        2.   Any defendant so convicted shall forfeit to the United

11   States of America the following:

12             (a)   All right, title, and interest in any and all

13   property, real or personal, constituting, or derived from, any

14   proceeds traceable to the offenses;

15             (b)   All right, title, and interest in any firearm or

16   ammunition involved in or used in any such offense; and

17             (c)   To the extent such property is not available for

18   forfeiture, a sum of money equal to the total value of the property

19   described in subparagraphs (a) and (b).

20        3.   Pursuant to Title 21, United States Code, Section 853(p),

21   as incorporated by Title 28, United States Code, Section 2461(c), any

22   defendant so convicted shall forfeit substitute property, up to the

23   value of the property described in the preceding paragraph if, as the

24   result of any act or omission of said defendant, the property

25   described in the preceding paragraph or any portion thereof (a)

26   cannot be located upon the exercise of due diligence; (b) has been

27   transferred, sold to, or deposited with a third party; (c) has been

28   placed beyond the jurisdiction of the court; (d) has been

                                   69

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offense set forth in Count Four of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the convicted defendant obtained, directly or indirectly, from any such offense;

(b)    All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

71

value; or (e) has been commingled with other property that cannot be divided without difficulty.

1                    FORFEITURE ALLEGATION FOUR

2          [21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c)]

3      1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 21,

6  United States Code, Section 853, Title 18, United States Code,

7  Section 924, and Title 28, United States Code, Section 2461(c), in

8  the event of any defendant's conviction of the offenses set forth in

9  any of Counts Five through Fifteen of this First Superseding

10 Indictment.

11     2.   Any defendant so convicted shall forfeit to the United

12 States of America the following:

13          (a)  All right, title and interest in any and all property,

14 real or personal, constituting or derived from, any proceeds which

15 the defendant obtained, directly or indirectly, from any such

16 offense;

17          (b)  All right, title and interest in any and all property,

18 real or personal, used, or intended to be used, in any manner or

19 part, to commit, or to facilitate the commission of any such offense;

20          (c)  All right, title, and interest in any firearm or

21 ammunition involved in or used in any such offense; and

22          (d)  To the extent such property is not available for

23 forfeiture, a sum of money equal to the total value of the property

24 described in subparagraphs (a), (b), and (c).

25     3.   Pursuant to Title 21, United States Code, Section 853(p),

26 any defendant so convicted, shall forfeit substitute property if, by

27 any act or omission of said defendant, the property described in the

28 preceding paragraph, or any portion thereof: (a) cannot be located

                                  73

upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1                            FORFEITURE ALLEGATION FIVE

2                   [18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3          5.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Section 924(d)(1), and Title 28, United States

7    Code, Section 2461(c), in the event of any defendant's conviction of

8    the offenses set forth in any of Counts Sixteen through Twenty-Three

9    of this First Superseding Indictment.

10         6.    Any defendant so convicted shall forfeit to the United

11   States of America the following:

12              (a)   All right, title, and interest in any firearm or

13   ammunition involved in or used in any such offense; and

14              (b)   To the extent such property is not available for

15   forfeiture, a sum of money equal to the total value of the property

16   described in subparagraph (a).

17         3.    Pursuant to Title 21, United States Code, Section 853(p),

18   as incorporated by Title 28, United States Code, Section 2461(c), the

19   convicted defendant shall forfeit substitute property, up to the

20   value of the property described in the preceding paragraph if, as the

21   result of any act or omission of said defendant, the property

22   described in the preceding paragraph or any portion thereof (a)

23   cannot be located upon the exercise of due diligence; (b) has been

24   transferred, sold to, or deposited with a third party; (c) has been

25   placed beyond the jurisdiction of the court; (d) has been

26   substantially diminished in value; or (e) has been commingled with

27   other property that cannot be divided without difficulty.

28

1       FORFEITURE ALLEGATION SIX

2    [26 U.S.C. § 5872, and 28 U.S.C. § 2461(c)]

3   1. Pursuant to Rule 32.2 of the Federal Rules of Criminal

4 Procedure, notice is hereby given that the United States of America

5 will seek forfeiture as part of any sentence, pursuant to Title 26,

6 United States Code, Section 5872 and Title 28, United States Code,

7 Section 2461(c), in the event of the defendant's conviction of the

8 offense set forth in Count Twenty-Four of this First Superseding

9 Indictment.

10   2. The defendant, if so convicted, shall forfeit to the United

11 States of America the following:

12    (a) All right, title, and interest in any firearm involved

13 in any such offense; and

14    (b) To the extent such property is not available for

15 forfeiture, a sum of money equal to the total value of the property

16 described in subparagraph (a).

17   3. Pursuant to Title 21, United States Code, Section 853(p),

18 as incorporated by Title 28, United States Code, Section 2461(c), the

19 defendant, if so convicted, shall forfeit substitute property, up to

20 the value of the property described in the preceding paragraph if, as

21 the result of any act or omission of the defendant, the property

22 described in the preceding paragraph or any portion thereof

23 (a) cannot be located upon the exercise of due diligence; (b) has

24 been transferred, sold to, or deposited with a third party; (c) has

25 ///

26 ///

27

28

1  been placed beyond the jurisdiction of the court; (d) has been

2  substantially diminished in value; or (e) has been commingled with

3  other property that cannot be divided without difficulty.

4

5

6                                      A TRUE BILL

7

8                                       /s/
                                       _____
                                       Foreperson
9

10  E. MARTIN ESTRADA
    United States Attorney
11

12

13  MACK E. JENKINS
    Assistant United States Attorney
14  Chief, Criminal Division

15  J. MARK CHILDS
    Assistant United States Attorney
16  Chief, International Narcotics,
      Money Laundering, and
17      Racketeering Section

18  CHRISTOPHER C. KENDALL
    Assistant United States Attorney
19  Deputy Chief, International
      Narcotics, Money Laundering,
20      and Racketeering Section

21  DANIEL H. WEINER
    Assistant United States Attorney
22  International Narcotics,
      Money Laundering, and
23      Racketeering Section

24

25

26

27

28